UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL ANTHONY THIGPEN,

        Petitioner,           Case No. 1:25-cv-440

v.                               Honorable Phillip J. Green

MINDY BRAMAN,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not

parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I.     Factual Allegations**

Petitioner Michael Anthony Thigpen is incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan.  Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of one count of first-degree murder, in violation of Mich. Comp. Laws § 750.316; one count of felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; and two counts of carrying a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.22b.  *See People v. Thigpen*, No. 360351, 2023 WL 9007527, at *1 (Mich. Ct. App. Dec. 28, 2023).  On February 7, 2022, the trial court sentenced Petitioner to life without parole for the first-degree murder conviction, a concurrent 6 to 20 years for the felon in possession conviction, and consecutive sentences of two years for each of the felony-firearms convictions.  *See* MDOC's Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=575347 (last visited May 29, 2025).

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals.  In a counseled brief, Petitioner raised the following claims of error: (1) the trial court erred by admitting expert testimony from Sergeant Dunlap, and counsel was ineffective for failing to introduce evidence to rebut that testimony; (2) the trial court deprived Petitioner of the right to present a defense by denying his request for the rebuttable-presumption jury instruction on

4

self-defense set forth in Mich. Crim. JI 7.16a; and (3) Petitioner's convictions for both felon in possession and felony-firearm violated principles of double jeopardy. *See generally Thigpen*, 2023 WL 9007527. In a *pro per* supplement brief, Petitioner argued "that he was denied effective assistance of counsel for a host of reasons." *Id.* at *7.

The Michigan Court of Appeals set forth the following facts underlying Petitioner's convictions:

> In 2019, [Petitioner] was romantically involved with two women. When one of the women found out about the other woman, she promptly ended the relationship with [Petitioner]. In a bizarre attempt to draw the woman back into a relationship, [Petitioner] called her and told her he was going to commit a murder. On November 19, 2019, [Petitioner] borrowed the other woman's vehicle and went for a drive. During that drive, [Petitioner] called his former girlfriend and told her that he was going to kill the first person he saw. In fact, his former girlfriend listened as [Petitioner] was driving, and then she heard gunshots.
>
> Several hours later, [Petitioner] called his former girlfriend and told her to come outside. He met her outside, told her "he killed somebody," showed her a gun, and asked her to get rid of it for him, but she declined to do so. Finally, he instructed her to watch the news. When she saw a news report of the murder as [Petitioner] had described it, she promptly called the police. Crime-scene investigators collected bullet casings from a .45 caliber gun and video footage from Ring cameras. Nothing was detected from the tape-lift test conducted inside the vehicle for gunpowder residue or the latent-print examination conducted on the exterior of the vehicle.
>
> On November 22, 2019, [Petitioner] was arrested and then taken to an interview room, where Detectives John Stolsonburg and Gary Gaudard from the Kalamazoo Department of Public Safety (KDPS) interviewed him. At first, [Petitioner] insisted he had not been in Kalamazoo on the day of the killing. By the end of the interview, however, [Petitioner] admitted that he had been in the area and that he had had a gun. [Petitioner] described the shooting as self-defense when the victim tried to get into his vehicle. Defendant stated "he'd rolled his window down and turned his music down and that he had reached for his gun which he said was on the seat next to him, the front passenger's seat[,] and

5

shot" the victim as the victim tried to get into the vehicle. The forensic pathologist who performed the autopsy testified that the victim had been shot twice in the head and once in the chest.

During [Petitioner's] trial, Sergeant James Dunlop of the KDPS was deemed qualified as an expert witness on shooting-scene reconstruction, and then he testified about the lack of gunpowder particles from samples that were obtained from inside the vehicle. Defense counsel objected to Dunlop's testimony, claiming a report was not produced prior to trial, but defense counsel did not present expert testimony to rebut Dunlop's opinions. Nor did trial counsel consult with a firearms expert before the trial began. Dunlop informed the jury that he took part in processing the vehicle on November 23, 2019, looking for "firearm related evidence" including "gunpowder particles" that are "part of that firing of the firearm" and "lead plume . . . that's atomized elemental lead that is basically revolving out with the gun smoke." Because Dunlop did not find any partially burned or unburned gunpowder particles or "lead plume" inside the vehicle, he opined that the muzzle of the firearm used to shoot Roosevelt Thompson was outside the vehicle when the gun was fired at Thompson.

After the close of proofs, defense counsel asked the trial court to give the jury M. Crim. JI 7.16a, which defines a rebuttable presumption regarding fear of death, great bodily harm, or sexual assault, but the trial court refused to give that instruction because the facts at trial did not support a finding consistent with that instruction. The jury did receive instructions about self-defense, so the jurors were left to make their own decision on that issue. Ultimately, the jury found [Petitioner] guilty of one count of first-degree murder, two counts of felony-firearm, and one count of felon-in-possession.

On October 25, 2022, [Petitioner] filed a motion for a new trial and to expand the record on the bases that the "lead plume" test conducted by Sergeant Dunlop is unreliable junk science when used to establish whether a gun has been fired in a certain location, and that defense counsel was ineffective because he did not consult with an expert on that issue before trial. On December 16, 2022, the trial court heard testimony from a firearms expert, David Balash, and defense counsel, Matthew Wait. On January 27, 2023, the trial court issued a 17-page order denying [Petitioner's] motion and finding that defense counsel's decision not to consult with a firearms expert was neither deficient performance nor a matter that affected the outcome of the trial.

*Id.* at *1–2.  On December 28, 2023, the court of appeals rejected all of Petitioner's claims of error and affirmed his convictions and sentences.  *Id.* at *1.  The Michigan Supreme Court denied Petitioner's application for leave to appeal on July 19, 2024.  *See People v. Thigpen*, 8 N.W.3d 592 (Mich. 2024).

The Court received Petitioner's initial federal habeas corpus petition on April 21, 2024.  (ECF No. 1.)  In an order (ECF No. 5) entered on April 24, 2025, the Court directed Petitioner to file an amended petition within 28 days using this Court's form for filing a § 2254 petition.  The Court received Petitioner's amended § 2254 petition (ECF No. 7) on May 27, 2025.  In his amended petition, Petitioner raises the following ground for relief:

> I.   Abuse of discretion by trial judge for failure to issue jury instruction M. Crim. JI 7.16a.

(Am. § 2254 Pet., ECF No. 7, PageID.26.)

## II. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

7

28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529

8

U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

As set forth above, Petitioner's sole ground for relief is that the trial court abused its discretion by failing to issue the jury instruction set forth in Mich. Crim. JI 7.16a. (Am. § 2254 Pet., ECF No. 7, PageID.26.) Petitioner contends that he "claimed self-defense[,] fearing that the ceased was attempting to pull him from his car." (*Id.*) Petitioner acknowledges that trial counsel requested the instruction, but that request was denied by the trial court. (*Id.*)

10

Petitioner raised this ground on direct appeal, and the Michigan Court of Appeals rejected it, stating:

> [Petitioner] faults the trial court for denying his request for jury instruction M. Crim. JI 7.16a, and he contends that error deprived him of his constitutional right to present a defense. We review questions about the legality of jury instructions de novo, but "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v. Gillis*, 474 Mich. 105, 113, 712 N.W.2d 419 (2006) (quotation marks and citation omitted). We "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v. Kowalski*, 489 Mich. 488, 501, 803 N.W.2d 200 (2011). Even if somewhat imperfect, reversal is not warranted if the "instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich. App. 326, 330, 820 N.W.2d 229. An unpreserved claim of constitutional error is reviewed only for plain error affecting the defendant's substantial rights. *People v. Hanks*, 276 Mich. App. 91, 95, 740 N.W.2d 530 (2007).
>
> Addressing [Petitioner's] challenges to the jury instructions, the trial court distinguished its willingness to give two standard instructions on self-defense, i.e., M. Crim. JI 7.15 and 7.16, from its unwillingness to give the rebuttable-presumption instruction on self-defense, M. Crim. JI 7.16a. As a result, the jury was permitted to consider [Petitioner] claim of self-defense and instructed that "a person is not required to retreat if he: has a legal right to be where he is at that time; and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm of himself or another person." M. Crim. JI 7.16. But the trial court refused to go so far as telling the jury about the rebuttal presumption under M. Crim. JI 7.16a, which states:
>
>> (1) If you find both that -
>>
>> (a) the deceased was in the process of breaking and entering a business or dwelling, or committing home invasion, or had broken into a business or dwelling, or committed home invasion and was still present in the business or dwelling, or was unlawfully attempting to remove a person from a dwelling, business, or vehicle against the person's will,
>>
>> and

> (b) the defendant honestly and reasonably believed the deceased was engaged in any of the conduct just described
>
> - it is presumed that the defendant had an honest and reasonable belief that imminent [death / great bodily harm / sexual assault] would occur. The prosecutor can overcome this presumption by proving beyond a reasonable doubt that the defendant did not have an honest and reasonable belief that [death / great bodily harm / sexual assault] was imminent.

The trial court deemed that instruction inapplicable because the only evidence that the victim was unlawfully attempting to remove [Petitioner] from his vehicle consisted of [Petitioner's] statement to the police that the victim "grab[bed] at or jiggle[d] the door handle" of [Petitioner's] vehicle.

"With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq.*, the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having a duty to retreat." *People v. Dupree*, 486 Mich. 693, 708, 788 N.W.2d 399 (2010). The SDA went into effect on October 1, 2006, *id.*, and with it the Legislature enacted MCL 780.951(1), see 2006 PA 311, which forms the basis for the rebuttable presumption defined in M. Crim. JI 7.16a. A defendant in a motor vehicle (as opposed to a dwelling or business premises) can rely on the rebuttable presumption only when the "individual against whom deadly force . . . is used . . . is unlawfully attempting to remove [the defendant] from a[n] occupied vehicle against his or her will." MCL 780.951(1)(a).

Addressing an argument virtually identical to [Petitioner's] claim in this case, we explained that the rebuttable-presumption instruction was unwarranted even though the evidence established that the victim "approached [the defendant's] vehicle and opened the front passenger door" with a "stick or a knife in his hand[.]" *People v Head*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2020, 2020 WL 2296875 (Docket No. 346431), p. 5. Despite a witness's belief that the victim "was going to strike" the defendant, no witness "testified to believing that [the victim] was trying to remove defendant from the vehicle, or to any actions by [the victim] that might have led to such an inference." *Id.* Therefore, we concluded that the rebuttable-presumption instruction in M. Crim. JI 7.16a(1) "was not applicable to any material issue, element or defense, and was not supported by the evidence." *Id.* [Petitioner's] argument in this case, which relies on the victim's "grab[bing] at or jiggl[ing] the door handle[,]" offers a weaker basis than the facts in *Head* for the rebuttable-presumption instruction in M. Crim.

12

> JI 7.16a. We need not follow *Head*, which is unpublished, *Cox v. Hartman*, 322 Mich. App. 292, 307, 911 N.W.2d 219 (2017), but we find its analysis persuasive on the requirements for obtaining a rebuttable-presumption instruction under M. Crim. JI 7.16a. As a result, we conclude that the trial court did not err in refusing to instruct the jury on the rebuttable presumption defined in MCL 780.951(1) by reading M. Crim. JI 7.16a to the jurors.
>
> Finally, [Petitioner] makes a constitutional issue of the trial court's jury instructions on self-defense by insisting that the denial of his request for the rebuttable-presumption instruction under M. Crim. JI 7.16a rises to the level of an abridgment of his right to present a defense. A defendant "has a due process right to present a defense under the state and federal Constitutions." *People v. Solloway*, 316 Mich. App. 174, 198, 891 N.W.2d 255 (2016). "But the right to present a defense is not absolute." *Id.* A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" during a trial. *People v. Hayes*, 421 Mich. 271, 279, 364 N.W.2d 635 (1984) (quotation marks and citations omitted). Because [Petitioner] did not present this constitutional challenge in the trial court, we can only review the matter for plain error affecting substantial rights. *Hanks*, 276 Mich. App. at 95, 740 N.W.2d 530.
>
> Here, [Petitioner] was not denied the right to present the defense that he acted in self-defense. First, [Petitioner's] recorded statement to the police was played for the jurors at trial, thereby giving [Petitioner] the opportunity to argue that he acted in self-defense even though [Petitioner] elected not to testify at trial. Second, the trial court gave the jury two comprehensive instructions, i.e., M. Crim. JI 7.15 and M. Crim. JI 7.16, defining the concept of self-defense for the jury and leading the jurors to consider self-defense in their deliberations. Third, the trial court instructed the jury, consistent with M. Crim. JI 7.20, that "[t]he defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense." In sum, other than reading M. Crim. JI 7.16a, the trial court did all that it could to afford [Petitioner] his right to present a defense of self-defense at trial. Because M. Crim. JI 7.16a was not an appropriate instruction on the facts of the case and the trial court did everything else in its power to ensure [Petitioner's] right to present a defense, no deprivation of [Petitioner's] constitutional right to present a defense occurred.

*Thigpen*, 2023 WL 9007527, at *4–5.

13

The Fourteenth Amendment's Due Process Clause guarantees a criminal defendant a meaningful opportunity to present a complete defense. *See California v. Trombetta*, 467 U.S. 479, 485 (1984). However, it is also the state's prerogative to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging the "general rule that the definition of both crimes and defenses is a matter of state law"); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6tth Cir. 2002) (noting that "[s]tates are free to define the elements of, and defenses to, crimes . . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

Moreover, the Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle v. McGuire*, 502 U.S. at 62, 75 (1991) (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). A habeas petitioner's "burden is especially heavy [when] no

14

[affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Estelle*, 502 U.S. at 75.

Here, although the court of appeals relied upon state law to reject Petitioner's claim of error, the court of appeals' determination is neither contrary to nor an unreasonable application of clearly established federal law.  Notably, the Supreme Court has not squarely established a federal constitutional right to receive a self-defense instruction; therefore, the trial court's refusal to give the requested instruction because of a lack of supporting evidence cannot be contrary to or an unreasonable application of clearly established federal law.  *See Ferrell v. Okereke*, No. 24-3101, 2024 WL 3677699, at *2 (6th Cir. June 24, 2024) (citing *Keahey v. Marquis*, 978 F.3d 474, 477–80 (6th Cir. 2020)); *see also Ficht v. Braman*, No. 2:19-cv-11323, 2024 WL 128199, at *3 (E.D. Mich. Jan. 11, 2024) (noting that "the United States Supreme Court has never clearly established that the federal [C]onstitution requires the giving of a self-defense instruction").  While the United States Court of Appeals for the Sixth Circuit has recognized that the instruction is constitutionally required where sufficient evidence to support a finding of self-defense is introduced and where the failure to give the instruction violates a defendant's right to present a complete defense, *see Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002), circuit precedent "may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Court] has not announced."

15

*Marshall v. Rodgers*, 569 U.S. 58, 64 (2013). Thus, given the lack of holdings from the Supreme Court, "it cannot be said that the [Michigan Court of Appeals 'unreasonably applied clearly established Federal law.'" *See Carey v. Musladin*, 549 U.S. 70, 76 (2006). For that reason alone, Petitioner is not entitled to federal habeas relief.

Moreover, even if the Sixth Circuit's holding in *Taylor* constituted clearly established federal law, the Michigan Court of Appeals' determination is not unreasonable in light of *Taylor*'s holding that instructions on self-defense are required only when sufficient evidence to support the defense has been introduced. As an initial matter, here, the trial court did not entirely reject Petitioner's request for self-defense instructions. As noted by the Michigan Court of Appeals, the trial court instructed the jury on the concept of self-defense, including that the burden fell to the prosecution to prove beyond a reasonable doubt that the defendant did not act in self-defense. The trial court only rejected Petitioner's request to have the jury instructed with regard to the rebuttable presumption set forth in Mich. Crim. JI 7.16a, concluding that the evidence that the victim grabbed or jiggled Petitioner's vehicle door handle was insufficient to allow the jury to conclude that the victim was forcefully trying to remove Petitioner from the vehicle against his will when Petitioner used deadly force.

The Michigan Court of Appeals upheld that determination, concluding that the evidence relied upon by Petitioner was weaker when compared to the evidence at issue in *Head*, a case where the court of appeals also concluded that the rebuttable-

16

presumption instruction was not warranted. Essentially, the court of appeals interpreted state law to conclude that the fact that the victim "jiggled" the door handle was insufficient to establish the requisite intent to remove Petitioner from the vehicle. This Court may not second-guess the court of appeal's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the trial court did not err by failing to give the rebuttable presumption instruction in light of the fact that there was not sufficient evidence from which the jury could conclude that the victim intended to remove Petitioner from the vehicle against Petitioner's will. *See Head v. Christiansen*, No. 22-1876, 2023 WL 2682578, at *2–3 (6th Cir. Jan. 27, 2023) (rejecting similar argument raised by petitioner).

For the foregoing reasons, Petitioner is not entitled to federal habeas relief with respect to the sole ground raised in his amended § 2254 petition. Accordingly, the Court will dismiss the petition for failure to raise a meritorious federal claim for relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated: June 5, 2025                         /s/ Phillip J. Green
                                                       PHILLIP J. GREEN
                                                       United States Magistrate Judge